JOHN A. COHEN AND ALISON L. COHEN, Petitioners, v COMMISSIONER OF INTERNAL REVENUE, Respondent
Cohen v. Commissioner
Docket No. 1539-88
United States Tax Court
T.C. Memo 1990-650; 1990 Tax Ct. Memo LEXIS 725; 60 T.C.M. (CCH) 1509; T.C.M. (RIA) 90650; December 27, 1990, Filed *725 Decision will be entered for the respondent. Alison L. Cohen, for the petitioners. Daniel Morman, for the respondent. BUCKLEY, Special Trial Judge. *726 BUCKLEY
*2158 MEMORANDUM FINDINGS OF FACT AND OPINION This case was heard pursuant to the provisions of section 7443A(b) and Rule 180 et seq. [1]
Respondent, by separate notices of deficiency, determined deficiencies in petitioners' Federal income taxes as follows: Additions to Tax
Year
Tax
Section 6653(a)(1)
Section 6653(a)(2)
1983
$  965.00
$ 48.00
*
1984
1,683.00
84.15
*
The main issue for determination is whether petitioners failed to report all tip income received by Alison L. Cohen (hereafter petitioner) from her employment *727 as a beverage server at the Claridge Hotel and Casino in Atlantic City during the 2 years in question. The secondary issue is whether petitioners were negligent if there was an underreporting of tip income. Some of the facts are stipulated and they are so found. Petitioners resided at Absecon, New Jersey, when they filed their petition herein. Petitioners were married during 1983 and 1984, but were separated at the time of trial. They filed joint Federal income tax returns for the 2 years at issue. Petitioner Alison Cohen was a cocktail waitress at the Claridge Hotel and Casino in Atlantic City during 1983 and 1984. She worked mainly during the day shift and served cocktails in the casino area of the hotel. Thus, her cocktail service took place in the area of gaming tables, and the cocktails she served were complimentary in nature. Petitioner's usual shift was from ten in the morning until four or five in the afternoon. The amount of tips she received was dependent upon how busy the gaming tables were during those hours. We accept petitioner's testimony that the day shift was slow until noon or thereafter. Petitioner maintained a daily record of tips during each of the *728 2 years. She listed tips at the end of each shift, as she took her "tip book" to work with her each day. She then utilized the tip book to report to her employer on a weekly basis the tips she received. The total amounts of tip income petitioner recorded in her tip books were $ 3,085 for 1983 and $ 2,752 for 1984. There were discrepancies in both 1983 and 1984 between the amount of tips petitioner recorded in her diaries and the amount she reported to her employer. In each year, tip amounts in the diaries exceeded amounts reported to her employer. Respondent, by his notices of deficiency, determined that petitioner had underreported tips by $ 4,678 in 1983 and $ 5,554 in 1984. *2159 During 1983 petitioner worked 1,173.75 hours in a tip-earning capacity, all during the day shift. During 1984, petitioner worked 1,118.6 hours in a tip-earning capacity on the day shift and 79.9 hours in such capacity on the swing shift. This case arose out of an undercover operation called the Atlantic City Tip Project. Special agents of the Internal Revenue Service, during 1984 and 1985, performed surveillance at ten casinos in the Atlantic City area, commencing on September 1, 1984. *729 Sampling plans were developed which covered the period from the beginning of the surveillance until August 31, 1985. The agents were instructed not to guess at the amount received by a waitress. If for instance, a tip was received and they could not see the denomination, their instructions were to use the lowest possible denomination. If funds were received when a waitress did not serve a drink, they were instructed not to include the amount as a tip since it could be for cigarettes or such item. The surveillances were designed to acquire a random sample of 210 observations of one-half hour each, over a full calendar year. As a result of the samples, it was determined that there was no discernible difference between tip rates at the various casinos, but that there were statistically significant differences between the shifts worked. Further, there were no statistically significant differences between days of the week. For instance, even though there were many more patrons during weekends, there similarly were more waitresses. Based upon the tip project results, the estimated average hourly tip rate for the day shift was $ 9.85 and for the swing shift $ 11.93. These rates were *730 then reduced by 5 percent to indicate 95 percent statistical confidence rates of $ 7.65 and $ 9.87, respectively. It was these latter figures which were applied by respondent in arriving at petitioner's gross hourly tip rate for both 1983 and 1984. Respondent, after computing the gaming table waitresses' hourly tips, reduced the gross amount by 15 percent to allow for payouts made to bartenders. This computation resulted in a net tip rate of $ 6.50 per hour for the day shift and $ 8.39 per hour for the swing shift. These rates were applied by respondent to petitioner's hours worked during both 1983 and 1984. Respondent had a similar tip project in place during 1981, a time prior to the opening of Claridge's Hotel and Casino, which resulted in significantly higher hourly tip rate figures. As a general rule, respondent's determinations are presumed correct and the burden is on petitioners to show otherwise. Welch v. Helvering, 290 U.S. 111 (1933); Rule 142(a). It is also well settled that tips received are includable in gross income as compensation for services rendered. Section 61(a); Killoran v. Commissioner, 709 F.2d 31 (9th Cir. 1983), affg. *731 a Memorandum Opinion of this Court. Where a taxpayer either keeps no records of tip income received, or it appears that the records do not clearly reflect tip income received, respondent is authorized by section 446 to compute income under a method which, in his opinion, does clearly reflect income. Menequzzo v. Commissioner, 43 T.C. 824, 831 (1965); Bruno v. Commissioner, T.C. Memo. 1985-168. We have held statistical surveys such as that in the 1984-1985 Atlantic City Tip Project to be an appropriate method of computing tip income. Catalano v. Commissioner, 81 T.C. 8 (1983), affd. without published opinion sub nom. Knoll v. Commissioner, 735 F.2d 1370 (9th Cir. 1984); Ross v. Commissioner, T.C. Memo. 1989-682; Bruno v. Commissioner, supra.
Reconstruction of income through statistical sampling is an allowed method to compute income where it is clear that petitioner did not maintain accurate records. Thus, in Ross v. Commissioner, supra, we upheld deficiencies based upon a sampling program almost identical to that utilized in this case. Ross also *732 concerned reconstruction of tips of cocktail waitresses in Atlantic City casinos, but for the year 1981. We held in Ross, as we held in Bruno v. Commissioner, [2]supra, that respondent's method of reconstructing tip income was reasonable under the circumstances. Respondent's method of computing income in the 1984-1985 Atlantic City Tip Project was reasonable. Respondent's study was formulated so as to provide a conservative estimate of tips received by cocktail waitresses in the gaming areas. We hold that petitioner failed to keep accurate records of the tips which she received, that she did not report accurate amounts to her employers, and that she understated her tips on her Federal income tax returns during 1983 and 1984 in the amounts determined by respondent. The next issue *733 for decision is whether petitioner is liable for the additions to tax under section 6653(a) (1) and (2). Section 6653(a) (1) imposes a 5 percent addition to tax if any part of an underpayment of tax is due to negligence or intentional disregard of rules and regulations. Section 6653(a) (2) provides for a separate addition to tax equal to 50 percent of the interest payable on the portion of the underpayment attributable to negligence or intentional disregard of rules and regulations. Respondent's determination is presumed correct and petitioner *2160 bears the burden of proving otherwise. Bixby v. Commissioner, 58 T.C. 757, 791-792 (1972); Rule 142(a). Negligence, within the meaning of these sections, has been defined as the failure to do what a reasonable and ordinarily prudent person would do under the circumstances. Neely v. Commissioner, 85 T.C. 934, 957 (1985). Because we find that petitioner understated her tip income, and that her books and records failed to reflect accurately her income as required by section 6001, respondent's determination regarding the additions to tax is sustained. Decision will be entered for the respondent *734 . Footnotes
1. All section references are to the Internal Revenue Code as amended and in effect for the years at issue. All Rule references are to the Tax Court Rules of Practice and Procedure.↩
*. 50 percent of the interest due on the full amount of the deficiency.↩
2. We required a recomputation in Bruno↩ because respondent's determinations were based upon inaccurate hourly work records of the taxpayer's employer. The statistical sampling, however, we held to be reasonable.